Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | | |
|---|---|---|
| **SHALON WATTS AND** | § | **CIVIL ACTION NO:** |
| **ANTHONY WATTS** | § | |
| | § | |
| *Plaintiffs* | § | |
| **v.** | § | |
| | § | |
| **ANCHORED TINY HOMES** | § | |
| **INCORPORATED;** | § | |
| | § | |
| *Defendant* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.    Parties

1.      Plaintiffs, SHALON WATTS and ANTHONY WATTS, are individuals that are now and have been at all times a citizens of Bonsall, state of California.

2.      Defendant, ANCHORED TINY HOMES INCORPORATED, hereinafter "ANCHORED TINY HOMES,"is a California corporation authorized to do and doing business in the state of California with its principal place of business located in the state of California and is a citizen of the state of Califronia and is the manufacturer, warrantor and seller of the Tiny Home that Plaintiffs purchased and is a merchant in goods of the kind  involved in this case.

-1-

ANCHORED TINY HOMES's agent for service of process is Colton Paulhus, 5980 88th Street, Suite 100, Sacramento, California 95828.

## II.    Jurisdiction

3.     This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.    Venue

4.     Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.    Conditions Precedent

5.     All conditions precedents have been performed or have occurred.

## V.    Facts

### A.    The Transaction

6.     On or about October 29, 2021, Plaintiffs purchased a new 2021 CUSTOM TINY HOME bearing VIN: 1A9T1BK39MM992073, hereinafter "CUSTOM TINY HOME," from the Defendant.

7.     The sales price of the CUSTOM TINY HOME was $110,767.00.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for

breach of warranty under the applicable state law.   See *Hughes v. Segal Enterprises, Inc.*, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B.    Implied Warranties

8.    As a result of the sale of the CUSTOM TINY HOME by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the CUSTOM TINY HOME would pass without objection in the trade under the contract description, and that the CUSTOM TINY HOME was fit for the ordinary purpose for which such motor vehicles are purchased.

9.    Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant.  Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.    Express Warranties

10.    In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the CUSTOM TINY HOME, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the CUSTOM TINY HOME had, in fact, repaired the defects.

11.    Plaintiffs' purchase of the CUSTOM TINY HOME was  accompanied by express warranties offered by the Defendant and extending to Plaintiffs.  These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the CUSTOM TINY HOME.

12.    The basic warranty covered any repairs or replacements needed during the warranty

period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the ANCHORED TINY HOMES's warranty booklet and owners manual.  Also, the Defendant, ANCHORED TINY HOMES, continued to agree to extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered for repairs during the original factory warranty.

**D.    Actionable Conduct**

13.    In fact, when delivered, the CUSTOM TINY HOME was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiffs' own words:

**"1.    Olimpia Splendid Heating Cooling Unit:**

**We confirmed with manufacturer (Diego Stefani) that unit is a 9 horsepower and not a 12 horse power as stated you; is inadequate to heat/cool the tiny house and is mounted incorrectly (oscillating fan is pointed up as it would be in a low wall mounted unit instead of pointing downward as in a high wall mounted unit.**

**Unit run at highest temperature setting and is unable Unit is very loud and vibrates strongly during operation.**

**RESOLUTION: Pursuant to you and Tony's conversation this past week, it is my understanding that you intend to replace the unit with a properly operating 12 HP unit.**

**2.    Refrigerator space/Bathroom door concern. This is a major design flaw. (A) The model and dimensions of the refrigerator were previous supplied to the designer and the build production manager. However, upon installing our refrigerator it was identified that the space was and continues to be too small despite us fixing/modifying the support shelf. Still the front legs**

-4-

**overhang the shelf. (B) At this point the bathroom door cannot be installed.**

**We even reversed the refrigerator doors. The refrigerator does not fit/operate with the current bathroom door set up. Which was why we wanted a pocket door. (C) Oddly, the bathroom door height is barely enough for us to clear and Tony is only 5"10"!**

**There appears to be room to extend the opening a few inches upward. Why this wasn't done is mind boggling. We were not advised about this either.**

**RESOLUTION: (A) Provide a smaller refrigerator; (B) Modify the refrigerator floor box and install a barn door that can slide in next to the refrigerator. (C) Increase height of the bathroom door opening.**

**3.     Window above steps has faulty seal. Window has humidity inside the glass which does not clear.**

**RESOLUTION: Replace window.**

**4.     Exterior door jam wood split upon installation and not replaced or repaired. Damaged door jam was left in an unsightly and unprofessional condition with a big screw hole. Weather stripping on sides of entry door not installed.**

**RESOLUTION: Replace damaged portion of door jam.**

**5.     Ceiling fan in living room inhibits operation of upper cabinets.**

**RESOLUTION: Install smaller sized fan, TBD. This should've been recognized by designer and build team. Why was this not recognized? Unprofessional.**

**6.     Kitchen cabinet handles not installed properly. Wood split where screw exited leaving damage and huge splinters of wood.**

**RESOLUTION: unknown how to resolve. Very sloppy work.**

**7.     Range hood was substituted without any contact. I chose a range hood that was very low profile but most importantly had**

750 cfm to eliminate cooking odors. The one installed is only 250 cfm and is a subpar unit.

**RESOLUTION: ???**

8.      Per design, the cabinet next to the refrigerator was to be a single hanging closet. It is not, it was made into two cabinets with shelves. I have no hanging closet.

**RESOLUTION: ???**

9.      Pantry was not secured during transport resulting in damage to the pantry door. Also, the bathroom door was secured with an eye hook in the wall in front of the pantry. The unsecured pantry door slammed into the eye hook, damaging pantry door and the wall.

Poor shipping preparation. Damage that I now have to repair.

10.     Wall switch at entry that operates the loft recessed lights does not work. The upstairs loft switch only works if I hold pressure to the toggle switch. (Suspicion of loose wiring- potential safety issue)

11.     Cooktop substituted with a subpar, poorly made cooktop. There was no communication regarding the substitution. Again, I was assured by your designer that there were no issues with appliances choices.

12.     No heating element under floor in kitchen. This was one of our must haves. If we were informed that there would be no in floor heating in the kitchen we would have stopped the build to find a viable solution. I was not contacted about this. Last conversation I had with Jared was that it would be run down the middle of the kitchen floor to the entryway.

**RESOLUTION: TBD**

13.     Glass doors of vanity not frosted as requested. This is yet another project (though not difficult) I will have to undertake.

14.     Loft height was promised to be about 48 inches. Designer was aware of our need for maximum loft height and would've

sacrifice bathroom height under loft to achieve it. Jared was informed of this at the start of the build. Loft is about 39.5" at its highest,

15.     No conversation about support beam in front of loft entry. I was not aware of its existence. If I could have it moved I would as it impedes entry to the loft. We were not given the opportunity to adjust the design to accommodate the support beam. As it stands, it is a struggle to enter and exit the loft.

RESOLUTION: Reposition the support beam.

16.     Rear closet deleted due to design issues with Kaitlyn (Was informed by Jared that there was an issue with previous designer and that ATH was now using a new professional design firm). My design should've been reviewed for function if there was a problem with the designer. Many of these issues could've been avoided. Subsequently, issues between the builder and designer have fallen in the lap of the customer.

RESOLUTION: I was under the impression that I would still have a shelf and a hanging bar across the back wall of the bathroom. It's just a blank wall. I could've been offered to have built in done or some sort of closet organizer. No solution was offered.

17.     Poplar ceiling not installed. In it's place an unstained pine ceiling was installed. Trim is also unstained. I was told by Kaitlyn that the trim would be stained to match the ceiling. It now sealed and would require a lot of sanding in order to stain it. No communication. I can deal with the pine but not unstained.

Resolution: Should have been sanded and stained or painted. Simple communication and review of materials list would've avoided this very disappointing mistake.

18.     Bosch W/D wrong series installed. I chose the 500 series for the heat pump option and dryer steam. The 300 series was installed and has neither of these options.

I was assured that any substitutions would be communicated as I had second and third options lined up. ALL OF MY APPLIANCES WERE SUBSTITUTED WITHOUT CONTACT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Appliances were chosen for specifications as well as asthetic. We were assured by the designer that our choices were fine and that we would be contacted if there was an issue or substitution. We were not contacted.

Unit was not clean upon arrival. There is adhesive and paint left on hardwood floor, sawdust and paint in cabinets, drawers, on cooktop, screws and pieces of metal found throughout, paint smears on hardwood floors, overspray of paint on trim, overspray of trim sealant in grout and on quartz countertops. There are gouges and scratches in the kitchen. Lastly, not one nail hole was filled in any of the trim. It is very unsightly. Things appear to have been rushed after 4-6 month delay.

Overall, we like the space but would've preferred it too be as we designed. There are a lot of disappointing things that need to be resolved. Important "must have" elements of my custom design were not done ( i.e the poplar ceiling, the heated floors in the kitchen, the built in rear closet, changes to the fishing cabinet due to poor designer/builder communication). We were assured that these things could be done. We were informed by the designer that there would be meetings between designer and build team to approve design, function, and choices. It seems doubtful that that happened.

I see on social media that ATH touts being a completely custom builder who assures folks that they " can design and choose everything" yet here I am lacking important chosen elements that were part of my custom design.

1.      The rear exterior right (passenger side) cabinet base impedes movement of the handle of the right rear stabilizer. Unable to turn handle to adjust right rear stabilizer.

2. Repair arc fault on living room breaker #9.

3. Extend height of bathroom door to maximum height.

4.      Modify refrigerator box to allow for clearance of barn door for bathroom. (Builder to provide new smaller sized refrigerator)

5.      Install barn door for bathroom.

-8-

1

2

3

The following can be addressed at a mutually convenient time:

**6.      Replace heating/cooling unit with Olimpia Splendid Maestro Pro 2 HP model.**

4

5

**7.      Replace window above stairs (faulty seal). 54x36 slider white vinyl.**

6

7

8

**8.      Repair wall switch at entry that operates the loft recessed lights does not work. The upstairs loft switch only works if I hold pressure to the toggle switch. (Suspicion of loose wiring-potential safety issue).**

9

10

**9.      Install smaller sized ceiling fan as the current fan inhibits opening of upper cabinets.**

11

12

**10.    Replace damaged portion of exterior door jam (Cedar).**

13

14

**11.    Replace all 6 kitchen cabinet drawers faces (wood split where hardware secured leaving damage and will continue to loosen over time)**

15

16

**12.    Add pull out shelf to cabinet under cooktop for oven storage.**

17

18

19

**13.    Modify cabinet next to refrigerator to be a hanging closet (Install hanging rod).**

**14.    Install hanging bar & shelving in rear of bathroom.**

20

21

**15.    Repair ~3/4" gap in loft right side between trim and ceiling.**

22

23

**16.    Replace broken plywood in under floor storage cabinet (broken and not flush)**

24

25

26

**17.    Install electric heating element under kitchen floor (flooring may need to be changed to accomodate underfloor heating. Current flooring is 3/4' hardwood, agreeable to change to engineered if we can find a close enough match to rest of flooring).**

27

28

**18.    Sand and stain pine ceiling and trim throughout to more**

**closely match floor. (wood currently sealed).**

**We have had to repair the bathroom sink drain that was leaking, the shower door was leaking and the kitchen faucet was not installed correctly and becomes loose. Unable to fix properly."**

14.     Since   purchase, Plaintiffs have tendered their CUSTOM TINY HOME to the Defendant for repairs on numerous occasions.  Despite this prolonged period during which Defendant was given the opportunity to repair the CUSTOM TINY HOME, the more significant and dangerous defects were not repaired.  The Defendant has failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the CUSTOM TINY HOME, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

15.     The defects experienced by Plaintiffs with the CUSTOM TINY HOME substantially impaired its use, value and safety.

16.      Plaintiffs directly notified the Defendant of the defective conditions of the CUSTOM TINY HOME on numerous occasions.

### VI.    Causes of Action

**COUNT 1:  VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

17.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18.     The CUSTOM TINY HOME is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

19.     Plaintiffs are"purchasers" of consumer goods as defined under the Song-Beverly

Consumer Warranty Act.

20.    The Defendant is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

21.    The sale of the CUSTOM TINY HOME to Plaintiffs was accompanied by an express written warranty.

22.    The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the CUSTOM TINY HOME and or can cause serious bodily injury or death.

23.    Plaintiffs have tendered their CUSTOM TINY HOME to the Defendant for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

24.    The Defendant has not repaired the non-conformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

25.    Further, the sale of the CUSTOM TINY HOME to Plaintiffs was accompanied by implied warranties that the CUSTOM TINY HOME was merchantable and fit for a particular use.

26.    Defendant has breached the implied warranties of merchantability and fitness for a particular use because the CUSTOM TINY HOME when sold would not pass without objection in the trade.

27.    Despite its breach of the express and implied warranties, the Defendant has refused Plaintiffs' demand for a refund or replacement.

28.    By failure of the Defendant to remedy the defects as alleged above, or to issue a refund or replacement, the Defendant is in breach of their obligations under the Song-Beverly

Consumer Warranty Act.

29.     The Defendant's continuing breach of its obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, the Defendant is liable to Plaintiffs for civil penalties in an amount as set forth below.

30.     Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of the Defendant's misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:     VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

31.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32.     Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

33.     The Defendant is "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

34.     The CUSTOM TINY HOME is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

35.     The express warranties more fully described herein above pertaining to the CUSTOM TINY HOME, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

36.     The actions of the Defendant as herein above described, in failing to tender the CUSTOM TINY HOME to Plaintiffs free of defects and/or refusing to repair and/or replace the defective CUSTOM TINY HOME tendered to Plaintiffs constitute a breach of the written and implied warranties covering the CUSTOM TINY HOME and hence a violation of the Magnuson-Moss Warranty Act.

37.     The Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

38.     As a direct and proximate result of the acts and omissions of Defendant as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $300,000.00 according to proof at trial.

39.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3:     BREACH OF EXPRESS WARRANTIES**

40.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

41.     The Defendant's advertisements and statements in written promotional and other

-13-

materials contained broad claims amounting to a warranty that Plaintiffs' CUSTOM TINY HOME or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the CUSTOM TINY HOME and warranted that the CUSTOM TINY HOME, was free of defects in materials and work quality at the time of delivery.

42.     As alleged above, the Defendant breached its warranties by offering for sale and selling as safe to Plaintiffs a CUSTOM TINY HOME that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

43.     In breach of the foregoing warranties, the Defendant has failed to correct said defects.

44.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the CUSTOM TINY HOME; costs of repairs; expenses associated with returning the CUSTOM TINY HOME for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 4:     BREACH OF IMPLIED WARRANTIES**

45.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

46.     The Defendant impliedly warranted that Plaintiffs' CUSTOM TINY HOME which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

47.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because the Defendant knew the defects existed and might not be discovered,

-14-

if at all, until the CUSTOM TINY HOME, had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

48.     Because of the defects, Plaintiffs' CUSTOM TINY HOME is unsafe and unfit for use and has caused economic loss to the Plaintiffs.   Therefore, the Defendant breached the implied warranty of merchantability.

49.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the CUSTOM TINY HOME; costs of repairs; expenses associated with returning the CUSTOM TINY HOME for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5:     NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

50.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

56.     The Defendant had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

51.     The Defendant breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

a.      Failure to design and manufacture a  CUSTOM TINY HOME  that did not harbor the defects alleged herein;

b.      Failure to notify Plaintiffs of the dangerous and defective condition of the CUSTOM TINY HOME when Defendant knew or should have known of the dangerous and defective condition;

c.      Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

d.      Failure to repair the CUSTOM TINY HOME  in accordance with the express and implied warranties.

52.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the CUSTOM TINY HOME; costs of repairs; expenses associated with returning the CUSTOM TINY HOME for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:    BREACH OF CONTRACT**

53.     Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

54.     Plaintiffs would show that the actions and/or omissions of Defendant described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

55.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the CUSTOM TINY HOME; costs of repairs; expenses associated with returning the CUSTOM TINY HOME for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 7:    NEGLIGENT REPAIR**

56.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

57.     On numerous occasions, Plaintiffs delivered the CUSTOM TINY HOME to Defendant for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

58.     On each occasion that Plaintiffs returned the CUSTOM TINY HOME  for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendant attempted repairs of the CUSTOM TINY HOME  pursuant to their obligations under the express and implied warranties. Defendant owed a duty of care to Plaintiffs to perform repairs on the CUSTOM TINY HOME  in a good and workmanlike manner within a reasonable time.  These Defendant breached this duty.

59.     The Defendant's attempted repairs of Plaintiffs' CUSTOM TINY HOME were done so negligently, carelessly, and recklessly as to substantially impair the CUSTOM TINY HOME 's use, value, and safety in its operation and use.  At no repair attempt was Plaintiffs' CUSTOM TINY HOME  fully and completely repaired by Defendant, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendant' attempts at repair.  Nonetheless, each time Plaintiffs picked up the CUSTOM TINY HOME after Defendant' repair attempts, Defendant represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

60.     As a direct and proximate result of Defendant's negligent failure to repair the CUSTOM TINY HOME  within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous CUSTOM TINY HOME  in conducting their daily activities.  As a further direct and proximate result of Defendant's failure to repair the CUSTOM TINY HOME  in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the CUSTOM TINY HOME  in for further repair attempts and to leave the CUSTOM TINY HOME for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

61.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the CUSTOM TINY

HOME; costs of repairs; expenses associated with returning the CUSTOM TINY HOME for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

### VII. Economic and Actual Damages

62.     Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

    a..    Out of pocket expenses, including but not limited to the money paid towards the note securing the CUSTOM TINY HOME;

    b.    Loss of use;

    c.    Loss of the "benefit of the bargain";

    d.    Diminished or reduced market value; and

    e.    Costs of repairs.

### VIII. Request for Rescission

63.     Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

64.     Plaintiffs revoke their acceptance of the CUSTOM TINY HOME for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendant that the defects in CUSTOM TINY HOME would be repaired.  Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendant as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seeks cancellation of the debt and now offers to return the CUSTOM TINY HOME to Defendant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### IX.    Attorney Fees and Costs

65.    Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### X.    Multiple Damages

66.    The Defendant' conduct  in violation of the Song-Beverly Consumer Warranty Act, Civil Code Section 1794, et seq, entitle Plaintiffs to an award for civil penalties and multiple damages.

67.    Plaintiffs have rightfully rejected or justifiably revoked acceptance of the goods and/or has exercised his right to cancel the sale pursuant to Sections 2711, 2712, and 2713 of the Commercial Code.

68.    Plaintiffs had previously accepted the goods, and, therefore, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform.

69.    The Defendant's failure to comply was willful and, therefore, the judgment should include, in addition to the amounts recovered, a civil penalty which shall not exceed two times the amount of actual damages.

### XI   Prayer

70    For these reasons, Plaintiffs pray for judgment against the Defendant for the

following:

a.    For general, special and actual damages according to proof at trial;

b.    Rescinding the sale of the 2021 CUSTOM TINY HOME bearing VIN: 1A9T1BK39MM992073 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.    For incidental and consequential damages according to proof at trial;

d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.    Any diminution in value of the CUSTOM TINY HOME, attributable to the defects;

f.    Past and future economic losses;

g.    Prejudgment and post-judgment interest;

h.    Damages for loss of use of CUSTOM TINY HOME;

i.    Civil Penalties and/or Punitive damages;

j.    Damages for mental anguish;

k.    Attorney fees;

l.    Costs of suit, expert fees and litigation expenses; and

m    All other relief this Honorable Court deems appropriate.

**XII    Demand for Jury Trial**

71.    Plaintiffs hereby demands a trial by jury to the extent authorized by law.

-20-

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
(337) 371-0375

ATTORNEY FOR PLAINTIFFS